UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY RAMON HALL,

      Plaintiff,

v.                                                                     Case No. 5:20-cv-525-TPB-PRL

LIEUTENANT ZACHARY,

      Defendant.
_____

## **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**I.    Status**

Plaintiff, a federal prisoner, filed this pro se civil rights action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), on about October 15, 2020. (Doc. 1). Plaintiff claims that Defendant unlawfully used excessive force against him in violation of the Eighth Amendment.

Before the Court is Defendant's Motion to Dismiss. (Doc. 21). Defendant argues that Plaintiff failed to exhaust his administrative remedies, Plaintiff cannot assert official capacity claims pursuant to *Bivens*, Plaintiff fails to state a claim, and Defendant is entitled to qualified immunity. Plaintiff filed a Brief in Response to Defendant's Motion to Dismiss. (Doc. 22). With the Court's permission, Defendant filed a Reply in Support of Motion to Dismiss. (Doc. 25). The Motion is ripe for review.

## II.     Plaintiff's Complaint

According to Plaintiff, on January 15, 2019, "Defendant took off running at a fast pace behind the [P]laintiff forcing him to run over five yards, and slammed hi[s] face and chest into the metal door frame corner while handcuffed."  Defendant then "pushed the button next to the metal door on the wall to get the door unlocked," and proceeded to escort "[P]laintiff to the segregation housing unit."  Lieutenant Prekins observed Plaintiff's jaw injury and contacted the medical department.  A doctor came to see Plaintiff and noted his injuries.  Plaintiff alleges his injuries included "damage to his right side jaw line" which required him to have a soft food diet for two weeks, a one-inch gash on the upper right side of his chest, and bruised ribs. He seeks monetary damages as relief.

## III.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) ("[O]n a Rule 12(b)(6) motion, we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." (internal quotations and citation omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id*.

(quotations, alteration, and citation omitted).  Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).  The Court liberally construes a pro se plaintiff's allegations.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

    **IV.**    **Exhaustion of Administrative Remedies**

        a.  Parties' Positions Regarding Exhaustion

In support of his position that Plaintiff failed to exhaust, Defendant submitted the Declaration and Certification of Records by Kenneth Richardson, a Staff Attorney at the Federal Correctional Complex in Coleman, Florida.  (Doc. 21-1).  Richardson avers in pertinent part:

> Computerized administrative records maintained by the Bureau reve[a]l Inmate Hall has filed two (2) administrative remedies at various administrative remedy levels since the beginning of his incarceration.
>
> Bureau records indicate he filed administrative remedy #979828-R1 at the Regional level on April 2, 2019, alleging issues in the Special Housing Unit ("SHU").  This remedy was rejected by the Region on June 5, 2019, because the Inmate must file his remedy at the institutional level first, for the Warden's review.
>
> Inmate Hall's second remedy, administrative remedy #982120-R1, was also filed directly to the Region on June 18, 2019.[1]  This remedy was filed as a

---

[1] In the remedy, Plaintiff stated: "On 1-15-2019 Lt. Zachary ran me face 1st in to a metal door jam around 6:30 or 7:00 AM. It happen[ed] right outside the LT's office in that little room with the offices and the little holding cell. [N]ow he works as the LT in the SHU and [I]'m worried he's gonna do

> "sensitive" remedy based on staff misconduct. The Region rejected this remedy on June 24, 2019, because the issue was not sensitive and should be filed at the institution level first.
>
> A rejection notice was sent to the inmate informing him that he needed to file at the institutional level first, because his remedy was not deemed sensitive.[2]
>
> There is no record Inmate Hall refiled any of his remedies. As such, there is no evidence he exhausted his remedies with the Bureau.

Doc. 21-1 at 3 (internal citations and paragraph enumeration omitted).

In response, Plaintiff argues that he "timely exhausted all available administrative remedies prior to filing his complaint." He asserts that he "was having all types of problems being in the SHU at USP Coleman II, to exhaust his administrative remedies as to the claims against Lt. Zachary, that's why Mr. Hall was force[d] to file a sensitive (BP9) to the Regional Director to proceed with his lawsuit." He further argues that "there was no way that [he] could have exhausted all his administrative remedies due to the fact that all his remedies that were filed at USP Coleman II were being destroyed by SHU officials to protect [Defendant] from being sued."

In his Reply, Defendant argues that Plaintiff had the opportunity to resubmit his "sensitive" grievance at the appropriate level, but he failed to do so. Defendant also submits that alternatively, Plaintiff failed to appeal the rejection of his

---

something again to[] me. [H]e's already hurt me very bad. [P]lease either move me or him." Doc. 21-1 at 15.

[2] The Rejection Notice is attached to Richardson's Declaration. *See* Doc. 21-1 at 13. In the Rejection Notice, Plaintiff was specifically advised that you "should file a request or appeal at the appropriate level via regular procedures." *Id.*

"sensitive" grievance. Additionally, Defendant argues that Plaintiff's "generalized, non-specific allegations of destruction of administrative remedies filed at the institution are not credible," and Plaintiff failed to provide any "specifics as to how many times he allegedly filed administrative remedies at the institutional level, when he filed them[,] . . . or who specifically he claims destroyed them." Finally, Defendant contends that even if Plaintiff could use the "sensitive" exception to bypass the institutional level, "Plaintiff filed the BP-9 well outside the applicable 20-day window" and he did "not provide any explanation for why he missed the 20-day deadline."

      b. Analysis

An inmate must first exhaust all available administrative remedies before filing any claim under *Bivens*. *See* 42 U.S.C. § 1997e(a). But a prisoner is not required to plead exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, "failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act (PLRA).]" *Id*. The defendant carries the burden of showing a failure to exhaust. *Id*. at 212. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their

> claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Pozo*,[3] 286 F.3d, at 1024. . . .

*Woodford*, 548 U.S. at 90. And "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id*.

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

*Ross v. Blake*, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate has properly exhausted his available administrative remedies is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. *Bryant*, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that this Court must employ when examining the issue of exhaustion.

> In *Turner v. Burnside*[4] we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id*. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id*. at 1082-83; *see also*

---

[3] *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).

[4] *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008).

> *id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

The Bureau of Prisons (BOP) provides an internal administrative remedy procedure for its inmates. *See* 28 C.F.R. § 542.10, *et seq*. Generally, a prisoner must complete a three-step sequential process if the informal resolution procedures fail to resolve the issue.[5] As to the formal administrative remedy procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 form to the Warden within 20 days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within 20 days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on the BP-11 form to the General Counsel within 30 days of the Regional Director's response. *See id.*

Here, Plaintiff contends that "he has timely exhausted all <u>available</u> administrative remedies prior to filing his complaint," but he also acknowledges that "there was no way that [he] could have exhausted all his administrative remedies due to the fact that all his remedies . . . were being destroyed." Doc. 22 at 4 (emphasis added). Considering these assertions, it appears Plaintiff concedes that he did not properly exhaust his administrative remedies prior to filing this case and the only dispute is whether the process was available to him. Therefore, the Court

---

[5] A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *See* 28 C.F.R. § 542.13(a).

does not discuss the two-step *Turner* analysis, but instead focuses on whether the process was available. *See Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 n.12 (11th Cir. 2020) ("Because proper exhaustion is not at issue, we do not discuss the two-step process for exhaustion outlined in *Turner* but focus our analysis on whether the grievance procedure was available.").[6]

The Supreme Court has delineated three circumstances that may render administrative remedies unavailable:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes... incapable of use... [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Geter*, 974 F.3d at 1355 (quoting *Ross*, 136 S.Ct. at 1859-60). The Eleventh Circuit has held:

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the

---

[6] If Plaintiff's assertions could be construed as arguing he properly exhausted, the Court would find that dismissal is not warranted at the first step of *Turner*, and the Court would move to the second step. Nevertheless, the Court's ultimate finding would not change because Defendant has shown that Plaintiff failed to properly exhaust his claim. The alleged incident between Plaintiff and Defendant occurred on January 15, 2019. Plaintiff did not submit any administrative remedies within 20 days of that date. The remedy he drafted on June 13, 2019, which was received on June 18, 2019, refers to the incident with Defendant but actually appears to report Plaintiff's concern about the potential for another incident unless either he is moved from the SHU or Defendant is reassigned. *See* Doc. 21-1 at 15. Even assuming, as Defendant does, that this administrative remedy addressed the incident alleged in the Complaint, the remedy was untimely and it was rejected "because the issue was not sensitive and should be filed at the institution level first." Doc. 21-1 at 3. Plaintiff did not appeal that rejection or refile his administrative remedy at the institutional level. Thus, Plaintiff failed to properly exhaust his administrative remedies.

> plaintiff inmate from lodging a grievance or pursuing a
> particular part of the process; and (2) the threat is one
> that would deter a reasonable inmate of ordinary
> firmness and fortitude from lodging a grievance or
> pursuing the part of the grievance process that the inmate
> failed to exhaust.

*Turner*, 541 F.3d at 1085.

Initially, the Court notes that Plaintiff's assertions regarding the unavailability of the administrative remedy process are vague and conclusory. He contends that he "was having all types of problems being in the SHU," but he fails to explain what those problems were or how they impeded his ability to properly exhaust his claim. Assuming Plaintiff intended the administrative remedy received on June 18, 2019 to address the claim raised here, he did not explain in that remedy why he was filing it beyond the 20-day period, what issues he was experiencing, or otherwise provide a "valid reason" for his delay. 28 C.F.R. § 542.14(b) ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame."); *see Abram v. Leu*, 848 F. App'x 868, 871-72 (11th Cir. 2021) (affirming district court's dismissal for failure to exhaust when the plaintiff filed an untimely grievance but failed to present a valid reason for his delay or otherwise seek an extension of time as permitted by the BOP's procedures). Insofar as Plaintiff contends that "all his remedies . . . were being destroyed by SHU officials to protect [Defendant]," he again does not provide any details about when he submitted such remedies, what he

alleged in those remedies, or who was destroying them. Nor does he explain how he was able to overcome the alleged hurdles and file remedies in April and June 2019.

Plaintiff did not properly complete the administrative remedy process, and neither Plaintiff's allegations nor the materials in the record indicate that those administrative remedies were unavailable to him.[7] Accordingly, it is

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 21) is **GRANTED**.

2. This case is **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of September, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

JAX-3 9/24
c:
Anthony Ramon Hall, #13397062
Counsel of Record

---

[7] In light of the Court's conclusion with respect to exhaustion, it need not address Defendant's other arguments in the Motion.